We'll call it 1645 NMT Medical vs. Cardio. Mr. Kline, good afternoon. Good afternoon, Your Honor. Please proceed. Thank you. Your Honor, Doug Kline for NMT Medical and Children's Medical Center Corporation, with me my colleague Michael Strapp. There are two claims principally at issue here, Your Honor, today, and one element of each claim. Claim 1 of the children's patent includes the limitation of pivot means for allowing rotation. The parties do not dispute the claim construction that the district court made concerning that claim. They disagree concerning the second part of the infringement analysis that the court reached, and in particular the court's finding and granting on summary judgment for cardia non-infringement. With respect to claim 12, there is a limitation that there is a collar connected to one occluder and a pin connected to the other occluder. NMT and Children's do in fact dispute the court's claim construction as a matter of law on that fact, Your Honor, on that legal question. And again, ultimately there is no dispute of fact on the correct claim construction that cardia infringes. With respect to claim 1, Your Honor, the parties agree that the pivot means for allowing rotation is a means plus function claim, that that claim should be construed pursuant to the statute in this court's precedent governing paragraph 6 of section 112. The parties agree concerning the claimed function. It is to permit two occluders, and I tend to do this, Your Honors, two occluders are allowed to pivot relative to one another, and they are allowed to rotate relative to one another. At the district court level, cardia advanced the argument that the claimed function of that limitation included that the occluders be permitted to translate with respect to one another, that is to move linearly toward and away from one another. The district court disagreed with cardia's proposal in that regard, and instead ruled simply that the claimed functions, again, are pivoting and rotation. Is translation a requirement of the claim? No, it is not, Your Honor. It is not, pardon me? That was read into the claim. It's our position that it was read into the claim during the court's second part of the analysis. Now, just looking at page 16 of your brief, which shows a picture of the first ball-and-collar assembly and the second ball-and-collar assembly. Yes, Your Honor. Would there be any kind of translation movement in that? There is a small amount of translation allowed in the accused. This is a photograph, Your Honor, of the accused cardia device. No, I understand that. And there's testimony that manufacturing tolerances allow for some translation back and forth. But again, it's NMT and the children's position that translation is not a requirement of the claim. So whether that device permits translation or not is not pertinent to neither claim construction nor the infringement analysis. But hypothetically, if that's a basic improvement, would that be a basis upon which not to find infringement? Because of the translation? Because it prohibits translation? No, because this allows translation. I don't think so, Your Honor. Now, remember that the accused device has said not to allow rotation. It doesn't. Pardon me. Not to allow translation. Translation. As a matter of fact, there seems to be agreement that it allows at least some small amount of translation. And cardia argues that the translation allowed by the accused device is merely for manufacturing tolerances. The patented device, as depicted in figures 5A and 5B of the patent, for example, allow a substantial amount of translation. Now, again, it's our position. Is that allowed translation or rotation? Translation. So, Your Honor, this is spinning like a pinwheel is rotation. That's rotation. That's rotation. Permitting the occluders to move toward and away from one another, that's translation. Translation. And pivoting is as if a door on a hinge. So cardia, and you've pointed correctly to page 16, they argue their device does not allow translation and therefore does not infringe the patent. They agree with the court's claim construction, however. They had argued at the district court level that the court should require translation, moving toward and away from one another, as a claimed function of the claimed pivot means for allowing rotation. Of claim one. Of claim one. The court disagreed. And the court found the functions under the 112th paragraph 6 analysis are pivoting and rotation. But you won on claim construction. We thought we did, Your Honor. You're the appellant. Yes. Help me understand what you're complaining about. Yes. Our complaint is what the court did was it then folded translation into the second part of the analysis. That's the part I'm having trouble seeing. It ruled that because the accused device only allows a little bit of translation, as opposed to the corresponding structure in the patents at figures 5A and 5B, which allows significant translation, the court held, incorrectly in our view, that it permits rotation in a different way. Now, first of all, Your Honor, that goes to whether the accused structure is an equivalent of the corresponding structure from the patent. It's our position that the accused structure is literally the same thing as the corresponding structure in the patent by a paragraph 6 section 112 analysis. Both figures 5A and 5B show a pin with a ball. The ball is held within a collar, which Cardia calls a sleeve. The ball has a diameter which is larger than the aperture of the collar. Now, Cardia's device includes two such ball and collar assemblies. But it is NMT and children's position that there is literal infringement of Claim 1 because the Cardia ball and sleeve structure is identical to the disclosed ball and collar structure shown in Figure 5B in particular. They simply have two of them, and they cannot avoid infringement by adding a second ball and collar structure to the accused device. The court disagreed. We would say the court made a mistake by, first of all, taking the accused device, considering it, and as a second step saying, now I have to go look at the patent to see whether I can find identical structure. That was a mistake. The court should have identified the function, pivoting and rotating. She did that. She should have done it. And she did it to your satisfaction. So where's the problem? Again, Your Honor, at the second part of the analysis, she agreed rotation is not required. But then she effectively read that into her second. She said, well, I'm going to look for equivalent structure. And I find when I look at the way and result steps of the paragraph 6, section 112 analysis, when looking for equivalent structure to the corresponding structure disclosed in the patent, she said that the Cardia device does not permit translation. It does not provide the claimed function in the same way. Because she talked about translating about a pin, rotating about a pin, as opposed to rotating about a pin. But there is minimal translation in a Cardia device. There is minimal translation. Both parties agree there is at least minimal translation permitted. But again, Your Honor, it's certainly our position that no translation is required whatsoever. When those balls, as depicted in figures 5A and 5B of the 235 patent, when those balls is seated against the end of the collar at the aperture, you have an identical structure to the accused Cardia device. That in addition, the figure 5A and figure 5B structure disclosed in the patent may allow those balls to move away from the end of the collar toward the occluder, thereby permitting the occluders to move closer to one another. That is an unclaimed function. It is unrelated to the function of pivoting. It would have been improper to read it into the claim as part of claim construction. You're right, Your Honor. The court did not do that. It was improper to consider it in connection with the second step of the infringement analysis and to rule that it is a grounds for finding no infringement of the Cardia device. I didn't understand that that's what she did. I'm having trouble. You say that's effectively what she did. Show me where she did what you're saying she did. What page of her opinion? The court acknowledges, Your Honor, page 19 of her decision that figures 5A and 5B are corresponding structures. You don't disagree with that? I do not disagree with that. Where's the part where you do disagree and where you say she is illegal? Page 26, Your Honor. Oh, it certainly isn't illegal. Page 26, Your Honor. She says, Cardia's intercept ball and sleeve connector means, on the other hand, allows pivotal and rotational freedom while essentially allowing no translation. That's about the middle of her decision. I see. That's just descriptive. That's just saying what the accused product does and how it doesn't, what it doesn't do. Pardon me, Your Honor? I don't see that that's a basis of her decision. That's just a descriptive sentence describing the accused product. At the bottom of page 25, she says, the court says, the structure of the intercept device has also achieved substantially different results from the results achieved by the structures depicted in 5A and 5B. First, the intercept devices allow greater pivotal freedom. There's no degree of pivoting required by Claim 1 of the 235 patent. Then the connector means of 5A and 5B. In Figures 5A and 5B, pivotal freedom is restricted as the pins move deeper into the collar. That is translation, Your Honor, as the pins move deeper into the collar. That's a reference to translation. Because the pins in the intercept devices nearly butt each other in the sleeve, pivotal freedom is not restricted in this manner in the intercept device. That's a reference to translation, Your Honor. She does, in respect to the way component of the equivalent analysis under paragraph 6 of Section 112, sorry to go back to where I just was, Your Honor, but the paragraph on page 25, the court wrote, First, the way the structures depicted in Figures 5A and 5B allow the occluders to pivot relative to one another is different from the way CARDIA's intercept devices allow pivoting, whereas the structures in 5A and 5B pivot about a pin in collar when the occluders move toward and away from one another. That's a reference to translation. In the CARDIA devices, the pivoting occurs only above a ball and collar. The CARDIA devices do not allow the occluders to move toward and away from each other, and therefore do not allow pivoting above the pin. That's two places, Your Honor, both the way component of the analysis and the result component of the analysis where the court, in making the second step of its analysis under Claim 1, relied on translation. I just read Judge Erickson as saying the structure is very different. How do I know it's very different? Well, number one, I look at it and it looks very different, and number two, it works differently in several ways, which he then describes. I don't see why that's harmful error. We disagree with her conclusion that the structure is very different. Well, I know you do, but that doesn't make her wrong because you disagree with her. Well, I can understand that, and I think how she got to the wrong result, Your Honor, is by starting with rather than looking at the corresponding structure in the patent and trying to find structure, seeing whether that is equivalent to the structure in the accused device, she started with the accused device, went in the other direction. If I could, Your Honor, because I'm into rebuttal with respect to Claim 12, that seems very straightforward to us. The claim says a collar connected to one occluder, a pin connected to the other occluder. The court held that connected there means directly connected. In her opinion, she says what the examiner wanted to know is how is it attached to the occluder. Right. There was an indefiniteness rejection court. So she takes the amendment to answer the examiner's desire to know about attachment. That's right. And therefore she concludes the word connected to be synonymous with attached. With directly connected, ignoring that the very same claim uses the word connected earlier in the claim to refer to the occluders as being connected to one another. And indisputably, those occluders are indirectly connected to one another. They are not directly connected to one another. So the court made a claim construction ruling where connected has one meaning in one part of Claim 12 and a different meaning in a different part of Claim 12. The specification itself. Well, if there was no prosecution history, your argument about inconsistent interpretations of the same word in close proximity in the same claim would be very powerful. But where the amendment that talked about the pin being connected to one occluder and the collar end being connected to the other occluder, that's a different circumstance. There, the same word can have a different meaning because it arises out of a different context. I would say, Your Honor, that the examiner never asked the applicants to add the phrase directly connected. The examiner did not say, I do not understand how these elements relate to one another. I suggest that you add to the claim that a pin is directly connected to one occluder and a collar is directly connected to another. Well, if Judge Erickson is correctly reading what the examiner was worried about, that's all he was asking about. And he was using the word connected to mean directly attached. Well, I don't think there's support in the prosecution history, Your Honor, to suggest that the examiner was using the word connected to mean directly attached. The specification is replete with examples where the word connected is used indisputably. I agree with that, but that doesn't cancel out the exchange between the examiner and the patentee here. The patentee didn't have to agree to the examiner's suggested amendment. The patentee could have said, no, no, I want to do something different that I think will satisfy your concern. But the patentee didn't do that. The patentee verbatim adopted the suggestion of the examiner. Well, because the patentee had no reason to be concerned based on the specification, the other claims, that the word connected would be construed narrowly to mean directly connected. There was no need for the patentee to say it. Yeah, but in the one case, you're talking about the whole assembly. In the other case, you're talking about the end of the pin or the end of the collar. There are other places, Your Honor, where the specification uses the term directly connected. Specification talks about a rod being connected directly to one of the occluders. There are embodiments of the patent, figures 5E and 5F, for example, where we have links 82 and 84 are connected via an interconnecting link, 86, as opposed to figure 5F where 82 and 84 are directly connected to one another. The specification was entirely consistent. Connected was used throughout the specification, throughout the claims, in Claim 12 to mean linked or joined. And I'm sorry, I don't know the exact phrase in the brief, but to mean at least directly or indirectly connected. There was no reason for the applicants to be concerned that in this one instance, in this one instance throughout the entire specification and in the claim, that instead connected would be construed here and here only to mean directly connected. I've gone over my limit, but I'm certainly happy to answer any other questions. Thank you. Thank you. Mr. Allgaier. Good afternoon, Your Honors. May it please the Court. I think the important thing to recognize when we're looking at Claims 1 and the Claims of Dependent is that's a means plus function claim. So what we have- Well, that's all agreed to. I don't understand why both of you spend so much time discussing the points where there's complete agreement. The thing we should be focusing on is where the disagreement is. Yes, Your Honor. I was trying to get to that. The reason- well, the thing I want to focus on is the structure that they rely on is found in Figures 5a and 5b. That's all they relied on for the structure below. And because of that, that's where you get the differences. It's really six of one and half a dozen of another whether you say, well, if you're going to rely on those, then that structure is essentially written into the claim. Because that structure also allows translation, and they've not taught any other way to do it. The way the district court- Well, do you need translation? That's my problem. Where is the translation necessary? The structure in 5a and 5b- Allows translation. Allows translation. And, if I may, this is a model- But is it claimed? Pardon me? But is it claimed? The claim itself does not use the word translation. But as soon as you're having a means plus function claim and importing that means into the claim, the question is, have they taught a way to do this without harmful translation? And the answer in 5a and 5b is no. The other thing, of course- Well, wait a minute. I don't think you're answering Judge Geiertz's question. In the 112 analysis, the first thing we do is isolate what's the function. Yes, Your Honor. Here, two functions were isolated. Only two. Translation isn't one of them. That's correct, Your Honor. According to Mr. Klein, the trial judge wrongly interjected translation as a third required function in doing the infringement analysis. Well, Your Honor, she didn't do that. What she did is she looked at the structure they relied on and said, all right, is that the same or equivalent? This is the structure they relied on. Is that the same or equivalent? Well, for one thing, she said, it's not putting aside translation, the pivoting that is done, which is the other thing that has to be done, the pivoting goes about the pin, not the ball. And that makes a difference. The pivoting is not as much. It's not as smooth. And in fact, if it does translate during pivoting, and they don't teach a way to do it without allowing that, now you're going to have the pivoting with the pin interfering with the collar. And that's the difference that she found. Now, the other thing she said is part of the reason this is different is because it allows translation. They did not claim here to have invented a product and shown and taught a way to do it that did not involve translation. But even putting that aside. What does that have to do with anything in this case? Well, because the structure that they relied on to prove infringement is 26A. And we're looking at our structure compared to 26A and 26B, which is the only structures they relied at to fill in the need to do those functions. I thought it was figure 5A and 5B. I'm sorry, 5A and 5B. So that is, that was her reasoning for there. Now, they have to take out these differences or, in fact, these differences are, as the judge found, substantially different. The movement's different. The ability to seal is different. What is different about it? Well, maybe I can illustrate with the cardio device. This is a model of that. Cardio device, first of all, pivots about the ball, which gives you the smooth movement in all directions with no interference, as you see here. The question isn't which device is better or which has a greater degree of pivot. Those aren't claimed. The degree of pivot or functionality in terms of quality isn't claimed. All that's claimed is the function of pivoting and the function of rotating. Well, the question, though, is whether the pivoting and rotating is done in the same way to get the same result, and it's not. Well, I'm not sure you're right about that. It seems to me the question is whether the structure of the accused device is the same as or equivalent to the structure shown in 5A or 5B. The reason they're not the same or equivalent is, A, pivoting does not take place about the ball, which makes the pivoting less so, and there's no obstruction. But less or more is not part of the analysis. Less or more is not claimed. No degree of pivoting is claimed. Well, Your Honor, they're in fact—well, first of all, another point is it's questionable whether 5A and 5B even claim pivoting. The judge assumed that there was pivoting. But again, when you look at a collar structure, you don't have the kind of pivoting, nor do they teach pivoting in 5A and 5B. What they rely on for that is something about parallel or non-parallel, and it's ambiguous as to whether they're talking about the pins being lined up, which would not be parallel, or parallel to each other. So it's questionable whether it even teaches pivoting at all. But if it is, and what the district court found is pivoting, then it's simply not the same. Well, it says the claim itself, paragraph C, says connector means for fastening and pivot means for a long rotation of the first occluder. Yes, Your Honor. So if the pivot means are there, it doesn't have to be a 90-degree pivot or otherwise. It can just pivot, right? Well, we have to look at the—it's a means plus function claim. We have to look at the structures that they taught. And you go back to 5A and 5B. Yes, Your Honor. So if you go back there, it does speak to the connector means and the pivot means, right? So the pivot means are there, and the rotation is there. It rotates. Right. And whether it pivots or not is difficult to say. Well, it's a question of the degree of pivoting, isn't it? Yeah. If, for example— As long as it pivots some. Yes. Now, let's assume for a moment that it just wiggled, which is probably what it does if you look at the picture. Is that enough pivoting to be equivalent? Well, the judge said not. For one thing, you have this interference, which he noted in that structure, and they simply do not teach the degree of pivoting that you need. Yeah, but the degree is in the claim. I don't understand how you can make anything of the angle of pivoting when there's no metric in the claim about the angle of pivoting. Well, Your Honor, they did draw a picture of it, and that's the structure that we have. They don't explain in the claim how much it pivots. The word pivot isn't mentioned as it is in the other claim. What they did is they gave us a structure that we see in 5A and 5B, and that's what we have to work with. We have very little to work with, except what we can do by observing it is see that you get little or no pivot in 5A or 5B. If I could move on to 12, just briefly. The most straightforward to this claim is that approach that's taken by the district court. The examiner said. Well, where are you in the opinion? Pardon me? Where in her opinion are you now referring to? There's a big problem with people characterizing what opinions do as opposed to our looking at the actual words of the trial judge. Yes, Your Honor. I'm talking about pages 29 and 30 of the opinion. Starting with the second to the last sentence, what the judge discussed was the patentees initially sought to claim all ball and collar assemblies. They amended their claim in the present form to overcome the USPTO's objection that the proposed claim is indefinite because it failed to describe how the ball and collar assembly was related to the occluders. At that time, the patentees elected to claim a device wherein the collar is connected to one occluder and a pin and ball fitting is connected to the other occluder. Plaintiffs now seek to read out the claim limitation by arguing the intercept connector means, which has only pins connected to the occluders, infringe Claim 12. The doctrine of equivalence does not give them license to do so. They could have said to the examiner, no, we don't want to make that change. We think they should be able to be connected in any way. And they didn't do that. They made the change to say that one was connected to one. Now I'm totally confused. What they did in the amendment would seem to relate to literal infringement, not doctrine of equivalence infringement. They gave up under Section 112 to make the claim definite enough to have it allowed. They narrowed the claim. Under my understanding of that doctrine, they are not entitled to go back and get that ground back and say, you know what? We said one was connected to one, one was connected to the other, but actually they can be connected anyway. They'd be going right back to where they were before, where we simply knew they would be connected directly and indirectly. Before they made this amendment, they were connected. You're saying that they're stopped under FESTO from reclaiming under the doctrine of equivalence subject matter given up in a narrowing amendment. Yes, Your Honor. I didn't understand her to have. I believe that's what she means on page 30 where she says the Sage products case in 1424, Your Honor. But isn't the ball fitting connected in the 5B directly to one occluder? Isn't that connected directly? Or am I misunderstanding the entire figure? 5B on page 19 of her opinion. The collar is connected to one, and the pin is connected to the other. Directly? Directly, yes, Your Honor. So it's not indirect or otherwise? That's correct, Your Honor. 5B, the collar is directly connected to the occluder on the right as you look at the page, and the pin is directly connected to the occluder on the left as you look at the page. So why do we need doctrine of equivalence at all? Why isn't it just literal infringement? It is. It's not literally infringed because we've avoided literal infringement. On what basis did you avoid literal infringement? Because, oh, I'm sorry, Your Honor. In our device, the pin is connected to one occluder, and the other pin is connected to the other occluder. So there's no collar connected to one of the occluders. That's correct, Your Honor. I'm sorry. I missed your point. That's the difference. Your Honor, why isn't this a triable issue? There's no disagreement below, Your Honor, for example, as to whether the pin is connected to one occluder or the collar to the other occluder. It simply isn't. It either is or it isn't. We have two pins to two occluders on this. I'm talking about literal infringement under paragraph 6 where the structure would either have to be identical or equivalent. Why isn't the 112 paragraph 6 equivalent a jury issue in this case? Are you talking about a claim 12, Your Honor? No, I'm talking about on the claim that's drawn in means plus function. Oh, OK. Why isn't that a jury issue, Your Honor? Well, conceivably it could be, but no one disagrees what the patent says. No one disagrees what the structures are, and there's no disagreement as to what the accused devices do. They themselves have moved from summary judgment on that. The question is if the claim is constructed the proper way. I understand that they argue they're entitled to summary judgment instead of you who actually got it. But I'm not necessarily agreeing with that. I'm asking a different question, which is whether proper analysis of this evidence would lead to the conclusion that a jury should decide whether the structures are sufficiently equivalent for purposes of paragraph 6 to violate claim 1. Your Honor, we do not believe the jury would need to decide that. And the reason is because, as the district court said, no one disagrees that it's taught in the patent. You have this translation that is something that is detrimental to sealing, and no one disagrees that it's taught in the patent. The degree of the pivoting, where the pivoting is about the pin instead of the ball, would make a great deal of difference to the ability of the device to conform to a 3D surface. So the court's reasoning in that regard is based on the undisputed structure of the Cartier device, and then looking at the properly construed structure of the Claim 1 device as taught in the patent. In short, Your Honor, if you have no more questions, we do not believe that the inventors of the T3-5 patent either invented or claimed the kind of structure that Cartier has, nor is Cartier's structure equivalent. We ask that Your Honor's affirm the district court. Okay. Mr. Klein. Thank you, Mr. Allgaier. Mr. Klein, you have a minute and a half. Thank you, Your Honor. Very briefly, just to respond to the issues that arose, why isn't infringement, literal infringement of Claim 1, a triable issue of fact? It should at least go to trial, Your Honor. We talked during my direct presentation about why Children's is entitled to summary judgment of infringement. Nevertheless, you cited in our brief, our opening brief, pages 49 and 50, substantial evidence upon which a reasonable jury could have concluded that the accused structure is at least an equivalent, a paragraph 6, section 112 equivalent to the corresponding structure from the 235 patent. The only evidence identified by Cartier as summary judgment was a declaration from its expert. That declaration was submitted in support not just of summary judgment, but of Cartier's claim construction position. It took the view that translation was required of claim construction. It also took the view, that declaration did, that figures 5A and 5B do not allow pivoting. Both of those positions were contradicted by the ultimate decision that the court made. With respect, pardon me, to whether the court found that figures 5A and 5B permitted pivoting expressly at page 19 of the district court opinion, the court wrote, rather, the structures described and depicted in figures 5A, 5B, 5E, 5F, 5J, and 5K of the 235 patent allow both motions. Both motions being referred to there are pivoting and rotation. If you go to page 17 of our opening brief, you will see a correlation between figure 5B of the 235 patent and the accused intercept device that is grounds for reversing the district court's opinion and finding, as a matter of law, instead, that the accused intercept device infringes, literally, claim 1, not because there are equivalent structures between the patent and the accused Cartier intercept device, but rather, the identical structures, and that is depicted on page 17 of our brief. Thank you. All right, we thank both counsel. We'll take the case under advisement. All rise.